UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

CIVIL ACTION NO. 2004-171 - WOB

PAYSOURCE, INC.             PLAINTIFF

VS.         MEMORANDUM OPINION AND ORDER

TRIPLE CROWN FINANCIAL GROUP, ET AL          DEFENDANTS

This matter is before the court on a motion for judgment on the pleadings by defendants Pullen & Associates, LLC and Milton Pullen (Doc. #117), a motion to dismiss by defendant Judith Pullen (Doc. #129), and motion for leave to file reply brief out of time (Doc. #134).

The court has reviewed this matter and now issues the following memorandum opinion and order.

### FACTUAL AND PROCEDURAL BACKGROUND

Paysource, Inc. is a professional employer organization in the business of providing services to its employer clients, including employee benefit coverage. Defendants Triple Crown Financial Group, Inc. ("Triple Crown"), James Pullen, Milton Pullen, Jr.[1], and Pullen & Associates[2] are brokers who hold themselves out as providing employee benefit plan coverage.

---

[1] Milton Pullen, Jr. is James Pullen's father.

[2] Milton Pullen and his company are referred to herein as "the Pullen defendants."

In January 2003, James Pullen contacted representatives of Paysource regarding Triple Crown's ability to provide employee benefit plan coverage. Plaintiff asserts that it wanted a "fully funded program such that its liability would not exceed the premiums." Defendants James Pullen, Milton Pullen, Jr., Triple Crown, P&A, and Wallingford allegedly assured plaintiff, orally and in writing, that they could provide such a plan and that plaintiff's claims exposure would be limited to plaintiff's monthly premiums. Defendants also stated that plaintiff's monthly premiums would be held in trust to fund payment of employee medical claims, and that portions would be used to pay a third-party claims administrator, to purchase excess insurance coverage, and for administrative charges.

Plaintiff agreed to use these defendants as brokers to arrange such employee benefit coverage and, in September 2003, began submitting monthly premium payments of approximately $259,000 to Triple Crown.

On August 26, 2003, James Pullen wrote plaintiff a letter stating that Triple Crown was changing third-party administrators and that, effective September 1, 2003, it would be using Consumer Health Solutions, LLC ("CHS").

In early 2004, plaintiff became aware that its clients' employees' claims were not being paid. Plaintiff also alleges that it became apparent that neither Triple Crown nor the Pullens had

2

remitted monies to Caledonian and Presidential to purchase the excess coverage on plaintiff's behalf. Plaintiff alleges that at least one month's premium ($259,000) was taken by the Pullens for their own personal use.

Plaintiff's representatives met with defendants. Defendants Worthy and Milton Pullen made application for a $200,000 loan, which they told plaintiff would be used to pay employees' claims, but the loan proceeds were allegedly never so applied.

In May, 2004, Paysource representatives traveled to Spartanburg, South Carolina for a series of meetings with Worthy and Milton Pullen. Defendants allegedly assured plaintiff that they would provide an accounting and be personally responsible for Paysource's claims. Despite this, plaintiff alleges that problems with its plan continued.

Plaintiff also asserts that in a phone conversation on May 26, 2004, defendant Worthy, President of CHS, confirmed that Triple Crown and James Pullen did not remit at least $259,000 of plaintiff's premiums to CHS.

Plaintiff filed this action on August 10, 2004, asserting state law claims for (1) breach of contract, (2) breach of fiduciary duty, (3) conversion, (4) fraud, (5) accounting, and (6) declaratory judgment. Plaintiff subsequently moved to amend the complaint to add additional defendants, including Judith Pullen, the wife of Milton Pullen, Jr. That motion was unopposed, and the

amended complaint was filed.

The case is now in discovery. The court has held several hearings and issued a variety of rulings. Among these rulings, the court denied a motion to dismiss by CHS on ERISA preemption grounds.

The Pullen defendants have now filed a motion for judgment on the pleadings, arguing that plaintiff's claims against them are preempted under ERISA. Judith Pullen also has filed a motion to dismiss for failure to state a claim.

## ANALYSIS

### A. ERISA Preemption

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) (quoting 29 U.S.C. § 1144(a)).

In *Miami Valley*, the Sixth Circuit noted that the Supreme Court "has narrowed the preemptive scope of ERISA, moving away from the broadest meaning of the provision." *Id.* (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). Therefore, in interpreting ERISA's preemption clause, a court "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."

4

*Id.* at 698.

The purpose of ERISA preemption is to avoid conflicting federal and state regulations and to create a nationally uniform administration of employee benefit plans. *Id.* Thus,

> ERISA preempts state laws that (1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself. . . . <u>Congress did not intend, however, for ERISA to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.</u>

*Id.* (citations and internal quotations omitted) (emphasis added).

In *Miami Valley*, the Sixth Circuit held that an employer's state breach of contract and negligent misrepresentation claims against Miami Valley Pension Corporation ("MVP"), a record keeper and broker of life insurance policies, were not preempted by ERISA. *Id.* at 699-701.

As part of its record-keeping responsibilities, MVP was required to perform statistical testing to ensure that the Plan did not violate IRS "top-heavy" regulations that limit the percentage of plan assets attributable to key employees. Upon termination of the Plan, the employer discovered that the Plan had been improperly valued and that it had been in violation of the IRS regulations for a period of seven years. As a result, the employer was required to make an additional contribution to the Plan of $137,087.17, pay a

5

fine of $5,000, and pay $35,000 in service and legal fees. *Id.* 696.

The employer sued MVP, as well as the bank that had acted as the trustee of the Plan and which also had responsibility for the "top-heavy" testing. The Sixth Circuit held that the employer's breach of contract and negligent misrepresentation claims were preempted as to the bank, but not as to MVP.

The court began by noting that the "mere fact that an employee benefit plan is implicated in the dispute" is not dispositive of the preemption question. *Id.* at 699. Instead, the court looked to the source of the obligations which the employer alleged were not fulfilled to determine whether the purposes of preemption were implicated. As to the bank, the court found that its obligations to the employer arose solely from the Plan itself, and thus the contract claim was "necessarily a claim that a fiduciary breached the terms of the ERISA plan," a claim cognizable under ERISA § 502(a)(3)(A). *Id.* Allowing such a state law claim would create an "alternate enforcement mechanism" for the bank's performance under the ERISA plan, and it was thus clearly preempted. *Id.*

In contrast, the employer's relationship with MVP was as a non-fiduciary service provider whose obligations to the employer arose from the parties' oral agreement, not from the ERISA plan. *Id.* at 700. The court noted that, although the Sixth Circuit had not yet addressed the issue, "other courts of appeals have . . .

6

held that ERISA does not preempt state-law claims brought against non-fiduciary service providers in connection with professional services rendered to an ERISA plan." *Id.* at 698. In those cases, "a service agreement or contract *separate and distinct* from the ERISA qualified plan served as the basis for the state law claim." *Id.* at 699 (listing cases) (italics in original).

Application of these principles yields the conclusion that plaintiff's claims against Milton Pullen and Pullen & Associates are not preempted by ERISA. First, the Plan makes absolutely no mention of the Pullen defendants, and the court need not consult the Plan in connection with plaintiff's claims against them. Paysource's claims arise, not from the Plan, but from separate oral agreements and representations allegedly made by Milton Pullen. Thus, plaintiff's claims do not arise from an ERISA plan. *See Miami Valley*, 399 F.3d at 700-01[3]; *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003) (suit for breach of employment contract not preempted even though resolution of the claim affected plaintiff's right to benefits); *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 319 (2d Cir. 2003) (breach of contract claim based on actuarial contract not preempted); *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 723-24

---

[3]In *Miami Valley*, the Sixth Circuit also held that a non-preempted breach of contract claim could also be premised on an oral, rather than written, agreement between the employer and the non-fiduciary service provider. *Id.* at 700 n.3.

7

(9th Cir. 1997) (no preemption of breach of contract, breach of common law duties, negligence and fraud claims against bank who entered into custodial agreements with pension trust funds); *Coyne & Delaney Co. v. Selman*, 98 F.3d 1457, 1470-72 (4th Cir. 1996) (no preemption of state malpractice claim arising from contract to design benefit plan and obtain reinsurance); *Airparts Co., Inc. v. Custom Benefit Services of Austin*, 28 F.3d 1062, 1065-66 (10th Cir. 1994) (no preemption of negligence, indemnity, and fraud claims against outside consultant who contracted with employer to provide benefit plan advice and services).

The Pullen defendants argue that plaintiff's claims are preempted because they essentially seek ERISA benefits. The court disagrees. In *Miami Valley*, the Sixth Circuit rejected such an argument by MVS, the record keeper whose errors caused the employer to owe $137,087 in back pension contributions. MVP argued that the employer was simply seeking, through its state law breach of contract action, to recover these plan benefits. The Sixth Circuit stated:

> We have stated that "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit. . . . Not every cause of action which mentions plan benefits, however, requires preemption. <u>We have noted that reference to plan benefits may be "simply a reference to specific, ascertainable damages [the plaintiff] claims to have suffered as a proximate result of [the defendant's conduct]."</u>
>
> In this case, MVP entered into a contract with PONI to provide record-keeping services for the ESOP plan. The breach of

8

> contract resulted in substantial harm to PONI, for which it should be able to recover damages. Specifically, because of the failure properly to perform top-heavy testing, PONI was forced to pay approximately $177,087.17. In addition to the top-heavy contribution of $137,087.17, that amount includes the $5,000 fine paid to the IRS as well as $35,000 in costs and fees associated with bringing the plan into compliance. In this suit, PONI is seeking $161,513 in damages, of which PONI acknowledges a large portion is attributable to the top-heavy contribution. <u>Upon review of the pleadings, we conclude that PONI's damage request is not seeking recovery of denied plan benefits or contributions, but rather compensatory damages proximately caused by the breach of contract. The inclusion of the top-heavy contribution is simply to reference "specific ascertainable damages" suffered as a result of the breach, which is not the equivalent of an ERISA claim under § 502(a)(1)(B) to recover plan benefits.</u>

*Miami Valley*, 399 F.3d at 702-03 (citations omitted) (emphasis added). *See also Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003) (holding that reference to plan benefits in prayer for damages was merely a way to articulate specific, ascertainable damages flowing from breach of employment contract); *Wright v. General Motors Corp.*, 262 F.3d 610, 614-15 (6th Cir. 2001) (similar).

Likewise, Paysource's reference to the expenses it has incurred due to defendants' alleged actions -- the costs of covering employee claims - - is simply one measure and component of the compensatory damages it seeks as a result of defendants' alleged breach of contract and fraud, in addition to other damages (such as loss of clients) allegedly incurred as a result of the benefits debacle. This is not a "claim for benefits" preempted by ERISA.

9

B. **Judith Pullen**

Plaintiff's amended complaint contains no allegation that Judith Pullen, the wife of Milton Pullen, Jr., engaged in any overt acts that form the basis of plaintiff's claims in this case. Instead, the amended complaint alleges only that two checks -- one used to pay Paysource-related commissions to James Pullen and one used to pay money to CHS for "claims" -- were written from a joint checking account of Milton and Judith Pullen.[4]

Plaintiff's opposition to the motion to dismiss recites facts which, if true, might bear on the issue of whether Judith Pullen was a participant in Pullen & Associates or whether she could be personally liable for its debts because it operated as a partnership at relevant times. For example, plaintiff states that Milton Pullen's July 2004 credit report states that his employer from July 2001 until April 2004 was "Milton and Judy Pullen." If, as plaintiff speculates, Judith Pullen was a partner in her husband's business, or if they operated it as a joint venture, she potentially could be liable for its debts. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund*, 991 F.2d 387, 393-94 (7th Cir. 1993) (triable issue existed as to whether wife

---

[4]Copies of these two checks are attached to Judith Pullen's tendered reply brief. The May 12, 2004 check to CHS in the amount of $100,000.00 is a check from the Pullen's joint checking account. However, the August 7, 2003 check to James Pullen is from an account of Mid-America Underwriters LLC and signed by a Ross C. Gall.

10

intended to form partnership with husband such that she could be held personally liable for his unfulfilled debts); *Amoco Pipeline Co. v. Herman Drainage Sys., Inc.*, 212 F. Supp.2d 710, 729 (W.D. Mich. 2002) (fact issue existed as to whether farmer and his wife were joint venturers).

However, while plaintiff's brief makes such allegations against Judith Pullen, the amended complaint itself does not. The complaint does not allege facts which, if true, would create a basis for liability against her under these theories. That is, the complaint does not allege that Judith Pullen was a partner in Pullen & Associates or that she and Milton Pullen engaged in it as a joint venture.

Thus, the amended complaint fails to state a claim against Judith Pullen.

Therefore, having reviewed this matter, and the court being otherwise advised,

**IT IS ORDERED** that: (1) the motion for judgment on the pleadings by defendants Pullen & Associates, LLC and Milton Pullen (Doc. #117), be, and is hereby, **DENIED**; (2) the motion to dismiss by defendant Judith Pullen (Doc. #129), be, and is hereby, **GRANTED**; and (3) the motion for leave to file reply brief out of time (Doc. #134) be, and is hereby, **GRANTED**, and the tendered reply brief shall be deemed **FILED** upon entry of this order.

This 24th day of August, 2005.

                                             */s/ William O. Bertelsman*

                                             **WILLIAM O. BERTELSMAN, JUDGE**